Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 902 | **DATE** | 6/13/2001 |
| **CASE TITLE** | Midwestern Regional Med Ctr vs. Zweibach et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/10/2001 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 6-1) to dismiss Counts V, VI, VII and VIII of the complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 13 2001 | |
| | Notified counsel by telephone. | | date docketed | 12 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 01 JUN 13 PM 12: 57 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIDWESTERN REGIONAL MEDICAL CENTER, INC., and CTCA – PROFESSIONAL CORPORATION OF ILLINOIS, S.C., as assignees of Gregory Vanblarcom, deceased, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 01 C 0902 |
| AARON ZWEIBACH, INTERNATIONAL TESTING LAB, INC. and ALTA HEALTH AND LIFE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Defendant Alta Health and Life Insurance Company's motion to dismiss Counts V, VI, VII, and VIII of the complaint. For the reasons set forth below, the motion is denied.

### BACKGROUND

On a Rule 12(b)(6) motion to dismiss, we are obligated to accept as true the well-pleaded allegations of the complaint, as follows. In March 1998, Gregory Vanblarcom sought cancer treatment from Plaintiff Midwestern Regional Medical



Center, Inc. ("Midwestern"). At the time, Vanblarcom was employed by Defendant International Testing Lab, Inc. ("International Testing") and/or its owner, Defendant Aaron Zweibach. He conveyed this employment information to Midwestern. He further informed Midwestern that he was covered under an employer-sponsored health insurance policy issued by Anthem Health and Life Insurance Company ("Anthem"), the predecessor-in-interest to Defendant ALTA Health and Life Insurance Company ("Alta"). Vanblarcom executed an assignment of benefits agreement in favor of Midwestern for the purpose of enabling it to receive direct benefit payments from Anthem.

On or about March 13, 1998, prior to administering cancer treatment to Vanblarcom, Midwestern contacted Anthem to verify Vanblarcom's insurance coverage. Anthem confirmed coverage, and in reliance on this coverage Midwestern agreed to treat Vanblarcom. From March 18 to April 29, 1998, Midwestern and Plaintiff CTCA-Professional Corporation of Illinois, S.C. ("CTCA") (collectively, "Plaintiffs") rendered $146,112 worth of cancer treatment to Vanblarcom. They submitted bills for this amount to Anthem but received no payment from the insurance company.

On March 22, 1999, Plaintiffs learned that Anthem was not paying Vanblarcom's bills because of an "administrative problem" with International Testing

and/or Zweibach. Two months later, it learned that International Testing and/or Zweibach had reportedly failed to remit premiums to Anthem on behalf of Vanblarcom and other employees and that, consequently, Anthem had placed such employees on "administrative hold." Vanblarcom's health insurance coverage was ultimately terminated on October 1, 1998, seven months after Plaintiffs administered cancer treatment to Vanblarcom. Nonetheless, both Alta/Anthem and International Testing/Zweibach have refused to pay for Vanblarcom's cancer treatment.

On February 8, 2001, Plaintiffs filed this lawsuit against Alta, International Testing, and Zweibach in an effort to obtain payment for Vanblarcom's cancer treatment. The complaint contains a variety of state law claims against each of the Defendants; federal jurisdiction is based on diversity of citizenship. Alta has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against it, arguing that all are preempted by the Employee Retirement Income Security Act of 1972 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint (or counterclaim), not to decide the merits of the case. Triad Associates, Inc. v. Chicago Housing Authority, 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the Court must construe the complaint's

allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Insurance Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Associates Corp. v. Zenith Data

Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). It is with these principles in mind that we turn to the motion before us.

## DISCUSSION

### I. ERISA preemption

Alta contends that Counts V, VI, VII, and VIII allege state law causes of action that are preempted by ERISA. ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, 463 U.S. 85, 90, 103 S. Ct. 2890 (1983). With ERISA, Congress set out to "establish pension plan regulation as exclusively a federal concern." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S. Ct. 1549 (1987). The statute therefore provides for preemption of "all State laws insofar as they may now or hereafter relate to any [qualifying] employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has given this provision its "broad, common-sense meaning, such that a state law relates to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life, 481 U.S. at 47 (quotation marks and brackets omitted).

In order to decide whether Plaintiffs' state law claims against Alta are preempted by ERISA, we must first determine whether the health insurance plan under which Vanblarcom allegedly received coverage was an "employee welfare benefit plan"

within the meaning of the statute. In assessing ERISA coverage of Vanblarcom's plan, we must construe the allegations of the complaint in the light most favorable to Plaintiffs. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The complaint must survive unless it appears beyond a doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

ERISA defines an "employee welfare benefit plan" as:

any plan, fund or program...established or maintained by an employer...for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise...medical, surgical or hospital care or benefits in the event of sickness, accident, disability, death or unemployment.... 29 U.S.C. § 1002(1)(A).

The Department of Labor has issued regulations which attempt to clarify this definition. See 29 C.F.R. 2510.3-1. The regulations create a safe harbor for group and group-type insurance programs under which: (1) no contributions are made by an employer or employee organization; (2) participation the program is completely voluntary for employees or members; (3) the sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) the employer or employee organization receives no consideration in

the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. 29 C.F.R. § 2510.3-1(j). The Seventh Circuit has held that "[a]n employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor," particularly – though not exclusively – where the employer helps defray the employee's insurance cost. Brundage-Peterson v. Compcare Health Services, Inc., 877 F.2d 509, 511 (1989).

The complaint in this case alleges that at all relevant times, Vanblarcom "subscribed to, and was covered by, an employer-sponsored, funded health plan administered by Anthem, pursuant to a contract with [International Testing]." (Complaint at ¶ 11.) It alleges that the coverage was to be paid for by International Testing or Zweibach either through deductions taken from Vanblarcom's income or as a fringe benefit of his employment. (Complaint at ¶¶ 12 and 13.) Neither the plan nor the insurance policy under which Vanblarcom was allegedly insured is attached to the complaint or the motion to dismiss.

At the hearing on Alta's motion to dismiss, counsel for Plaintiffs indicated that he was unable to determine whether the case should be refiled as an ERISA action because Plaintiffs were not in possession of the applicable health plan. The Court

encouraged Alta to provide Plaintiffs with a copy of the plan, but Alta had not done so as of the date of Plaintiffs' response to the motion. Nor did Alta file a copy of the plan or insurance policy as support for its motion to dismiss. Rather, Alta asks the Court to conclude from the bare bones allegations in the complaint that the plan alleged is an ERISA plan.

Without the benefit of the plan language or any detailed information or allegations about the relationship between Anthem/Alta, Zweibach, and International Testing, the Court cannot determine "beyond a doubt" that Vanblarcom was insured under an ERISA plan. See Conley, 355 U.S. at 45-46. Construing the allegations in the light most favorable to Plaintiffs, as we must, we can only conclude that the arrangement may have fallen within the safe harbor created by the Department of Labor regulations. The complaint leaves open the possibility that Zweibach and International Testing played only the limited role of deducting insurance premiums from Vanblarcom's wages and remitting them to Anthem. Under the rationale of Brundage-Peterson v. Compcare Health Services, Inc., supra, this conduct may not have rendered the insurance arrangement an ERISA plan.

For purposes of Alta's motion to dismiss, we may look only to the allegations of the complaint. Those allegations taken alone are too ambiguous to dictate a finding that Vanblarcom was covered under an ERISA-qualified plan. Accordingly, the

motion to dismiss Plaintiffs' state law claims as preempted by ERISA is denied. This denial is without prejudice to Alta's right to raise the issue again once the exchange of discovery materials has shed some light on the nature of the plan and the relationship between the relevant parties.

**II. Federal common law**

Alta argues for the first time in its reply brief that the complaint fails to state claims for negligent misrepresentation and detrimental reliance under federal common law. This argument is untimely. Moreover, there is no indication that Plaintiffs' negligent misrepresentation and detrimental reliance claims arise under anything other than state common law. We therefore decline to address at this time the apparently hypothetical issue of whether the complaint might state federal common law claims on which relief may be granted.

## CONCLUSION

For the foregoing reasons, the motion to dismiss Counts V, VI, VII, and VIII of the complaint is denied.

*[signature]*

Charles P. Kocoras
United States District Judge

Dated: June 13, 2001